**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| SUZANNE ALIPOURIAN-FRASCOGNA, | |
| Plaintiff, | Case No. 21-CV-0001 |
| v. | Judge John Robert Blakey |
| ETIHAD AIRWAYS, and JOHN WRIGHT, | |
| Defendants. | |

## <u>MEMORANDUM OPINION AND ORDER</u>

The Due Process Clause of the Fourteenth Amendment limits a state's authority to bind a nonresident defendant to a judgment of its courts. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980). In order to exercise personal jurisdiction over a defendant, the Court must find that the defendant has "certain minimum contacts" with Illinois "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). While a nonresident defendant's physical presence within the territorial jurisdiction is not required, *see, e.g.*, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985), the defendant's contacts must satisfy at least three other requirements: (1) the contacts are created by the defendant himself; (2) the contacts are targeted at the forum state (as opposed to merely persons who reside there); and (3) the contacts

1

bear on the substantive legal dispute. *Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010).

This case turns on the first two requirements. Plaintiff Suzanne Alipourian-Frascogna ("Plaintiff") brings this action against her former employer, Defendant Etihad Airways ("Etihad") and her former supervisor, Defendant John Wright ("Defendant Wright"), alleging discrimination, harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.* and 42 U.S.C. § 1981. In substance, she contends that as of 2017, Etihad imposed discriminatory policies designed to favor employees of Emirati descent, [1] ¶¶ 31–36, 109–113, and accomplished these policies by way of its "agent," Defendant Wright, *id.* ¶ 6. Following years of alleged harassment, Etihad and Defendant Wright (collectively, "Defendants") terminated Plaintiff's employment. *Id.* ¶ 95; [21-3] ¶ 16.

Defendant Wright has moved to dismiss for lack of personal jurisdiction under Federal Rule of Civil 12(b)(2). [17]; [18]. He argues that he is an Australian citizen and domiciliary of the United Arab Emirates ("UAE"). [18] at 13, ¶ 3. He has never lived in Illinois nor traveled to Illinois for work, and he supervised Plaintiff's work entirely from the UAE. [18] at 13, ¶¶ 3–5; [21] at 6–7. All of his communications with Plaintiff were conducted via electronic means, [22] at 1, in part because his position calls for the oversight of 75 airports in approximately 46 different countries, *see* [22-1] ¶ 3. In short, Defendant Wright contends that his only connection with Illinois is, in fact, Plaintiff. [22] at 4.

2

The central question before the Court is whether Defendant Wright has a "substantial connection" with Illinois; that is, whether his contacts connect him to Illinois in a "meaningful way," such that he should reasonably anticipate being haled into court within the state. *See, e.g.*, *Walden v. Fiore,* 571 U.S. 277, 290 (2014). For reasons explained in greater detail below, the Court finds that Defendant Wright's contacts with Illinois are too attenuated to support an exercise of specific personal jurisdiction and grants his motion. [17].[1]

## I.  Legal Standard

Federal Rule of Civil Procedure 12(b)(2) requires dismissal of a claim where personal jurisdiction is lacking. A complaint "need not include facts alleging personal jurisdiction." *Steel Warehouse of Wisc., Inc. v. Leach*, 154 F.3d 712, 715 (7th Cir. 1998). Once the defendant moves to dismiss the complaint for lack of personal jurisdiction, however, the plaintiff bears the burden of demonstrating the existence of jurisdiction. *See Central States, S.E. & S.W. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 939 (7th Cir. 2000); *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997). In other words, where a "defendant has submitted affidavits or other evidence in opposition to the exercise of jurisdiction, the plaintiff must [then] go beyond the pleadings and submit affirmative evidence

---

[1] Defendant Wright also seeks dismissal pursuant to Federal Rules of Civil Procedure 12(b)(4) and 12(b)(5) on the basis that Plaintiff failed to effectuate proper service of process. *See* [18]; *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 767 F. Supp. 2d 880, 891 (N.D. Ill. 2011) ("Motions under Rules 12(b)(4) and 12(b)(5) challenge the process and the service of process, respectively."). Because the Court lacks personal jurisdiction over Defendant Wright, it need not address any of his other arguments for dismissal. *Kraft Chem. Co. v. Salicylates & Chemicals Priv. Ltd*, No. 14 C 04186, 2014 WL 11127924, at *3 (N.D. Ill. Oct. 28, 2014) ("Absent any basis for exercising personal jurisdiction, the Court need not—indeed, cannot—address the defendant's other arguments for dismissal.").

supporting the exercise of jurisdiction." *TopstepTrader, LLC v. OneUp Trader, LLC*, No. 17 C 4412, 2018 WL 1859040, at *1 (N.D. Ill. Apr. 18, 2018) (internal quotations omitted).

When the district court rules on a defendant's motion to dismiss based upon the submission of written materials, absent an evidentiary hearing, the plaintiff "need only make out a *prima facie* case of personal jurisdiction." *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002); *see also Nelson v. Park Indus., Inc.*, 717 F.2d 1120, 1123 (7th Cir. 1983) ("[T]he burden of proof is met by a *prima facie* showing that personal jurisdiction is conferred under the relevant jurisdictional statute."). In assessing whether the *prima facie* standard has been satisfied, the plaintiff "is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record." *Nelson*, 717 F.2d at 1123; *see also RAR*, 107 F.3d at 1275 (stating that the plaintiff "is entitled to have any conflicts in the affidavits resolved in its favor"). The Court takes as true, however, unrefuted facts in Defendant's affidavits. *GCIU-Emp. Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1020 n.1 (7th Cir. 2009).

## II.    Factual Background[2]

Etihad Airways is the National Airline of the UAE. [1] ¶ 1. It is wholly owned by the Government of Abu Dhabi and conducts business throughout the territorial jurisdiction of the United States—including within the state of Illinois. *Id.* ¶ 9.

---

[2] The facts are taken from the complaint, [1], and other evidence submitted by the parties, including several sworn statements, *see* [18] at 13, [21-2], [21-3], [22-1], [25-1]; *see also Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) (stating that a court may receive and weigh affidavits to determine whether it has personal jurisdiction) (citation omitted).

Defendant Wright serves as the Vice President of Global Airport and Network Operations of Etihad. *Id.* ¶ 10; *see also* [18] at 13. He is an Australian citizen, but as of 2013, remains continuously domiciled in the UAE. *See* [18] at 13. As Vice President of Global Airport and Network Operations, Defendant Wright is responsible for the oversight of 75 airports in approximately 46 countries across the globe, including several based in the United States (New York, Chicago, Los Angeles, and Washington, D.C.). [22-1] ¶ 3; *see also* [25-1] ¶ 4 (explaining that "in that position, John Wright was responsible for all Etihad operations around the world"). Defendant Wright is responsible for approximately 450 employees domiciled outside the United States. [22-1] ¶ 3.

Plaintiff joined Etihad in 2007 as a "Lounge and Special Services Manager." [1] ¶ 18. Over the years, and several promotions later, Plaintiff was named the "Regional Manager" for the Americas. *Id.* ¶¶ 19–23. In 2017, Plaintiff was promoted once more to "Regional Manager" for Europe and the Americas, with the primary responsibility of overseeing Etihad operations and services at airports in the United States, Canada, South America, the United Kingdom, Europe, and Morocco. *Id.* 24–25. At all times during her employment with Etihad, Plaintiff resided in Illinois, though she "did considerable travel back and forth to her airports and to Abu Dhabi for work." *Id.* ¶¶ 8, 26.

In 2017, Plaintiff became aware of several internal Etihad policies designed to favor Emiratis in employment decisions and tax treatment. *Id.* ¶ 31. Specifically, she learned that Etihad reserved "any newly opening" Airport Manager ("APM") roles

5

for individuals of Emirati descent, and further that the Etihad Board "mandated that by 2022, all APM roles should be filled with Emiratis." *Id.* ¶¶ 32–33. She also witnessed the Company give American citizens of Emirati descent more favorable tax treatment than those not of Emirati descent. *Id.* ¶¶ 4, 99–118 (describing Etihad's "practice of paying U.S. taxes for U.S. citizens/residents of Emirati descent and/or national origin, but not for U.S. citizens who are not of Emirati descent"). Over the course of the next two years, Plaintiff watched the various policies take effect with growing anxiety. *Id.* ¶¶ 34–36. At several points, Plaintiff spoke with Defendant Wright about the discriminatory policies, *id.* ¶¶ 37–39, 47–49, 61, 82, and filed formal complaints with Etihad's internal human resources department, *id.* ¶¶ 40, 66. According to Plaintiff, Defendant Wright responded with threats and discriminatory statements of his own, and placed pressure on Plaintiff in an effort to provoke her departure. *Id.* ¶¶ 2–3, 38–39, 41–42, 44–49, 62–64, 71–73, 79–82. In 2020, Etihad allegedly terminated Plaintiff's employment as a result of the discriminatory policies and in retaliation for her complaints of discrimination. *Id.* ¶¶ 83–98. Following her termination, Plaintiff brought suit.

## III.  Analysis

The requirement that a court have personal jurisdiction over a defendant arises from the Due Process Clause. *See Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982) (Personal jurisdiction "represents a restriction on judicial power not as a matter of sovereignty, but as a matter of individual liberty."). As this Court is exercising federal-question jurisdiction, it has

personal jurisdiction over Defendant Wright if either federal law or Illinois law authorizes service of process. *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010). "Neither Title VII nor § 1981 authorize nationwide service of process, *see* 42 U.S.C. §§ 1981, 2000e-5(f)(3), so personal jurisdiction in this case is governed by the law of Illinois." *Hill v. Consultants in Pathology, S.C.*, 345 F. Supp. 3d 1011, 1015 (N.D. Ill. 2018). Illinois, in turn, permits personal jurisdiction if either the Illinois Constitution or the United States Constitution authorizes it, so "the state statutory and federal constitutional requirements merge." *uBid, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 425 (7th Cir. 2010); *see also N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 492 (7th Cir. 2014) ("[T]he statutory question merges with the constitutional one—if Illinois constitutionally may exercise personal jurisdiction over a defendant, its long-arm statute will enable it to do so.").

Personal jurisdiction comes in two forms: general and specific. *See uBid*, 623 F.3d at 425. General jurisdiction arises when the defendant has "continuous and systematic" contacts with the forum state. *Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 416 (1984). A defendant is subject to general jurisdiction only where its contacts with the forum state are so substantial that it can properly be considered "constructively present" or "at home" in the state. *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011). Given the "high" threshold for general jurisdiction, *Tamburo*, 601 F.3d at 701, Plaintiff relies solely on specific personal jurisdiction, which grows out of "the relationship among the defendant, the

forum, and the litigation." *Walden*, 571 U.S. at 277 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)).

In assessing the existence of specific jurisdiction, courts first determine whether the defendant's contacts with the forum state demonstrate that it "purposefully availed" itself of the "privilege of conducting business in the forum state" or "purposefully directed" its activities at the state. *Lexington Ins. Co. v. Hotai Ins. Co., Ltd.*, 938 F.3d 874, 878 (7th Cir. 2019); *Tamburo*, 601 F.3d at 702 ("[W]here, as here, the plaintiff's claims are for intentional torts, the inquiry focuses on whether the conduct underlying the claims was purposefully directed at the forum state."); *see also Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1014, 1016 (2020) (understanding 42 U.S.C. § 1981 to have been "legislated" against the backdrop of "textbook tort law" (citations omitted)). Following the Supreme Court's decision in *Calder v. Jones*, purposeful direction asks whether: (1) the defendant engaged in "intentional conduct (or 'intentional and allegedly tortious' conduct); (2) expressly aimed at the forum state; (3) with the defendant's knowledge that the effects would be felt—that is, the plaintiff would be injured—in the forum state." *Tamburo*, 601 F.3d at 703 (citing *Calder v. Jones*, 465 U.S. 783, 789–90). Next, courts look to whether the plaintiff's alleged injury arises out of the defendant's forum-related activities. *Id.* Finally, a court's exercise of personal jurisdiction must "not offend traditional notions of fair play and substantial justice." *Tamburo*, 601 F.3d at 701 (quoting *Int'l Shoe*, 326 U.S. at 316).

The principal dispute between the parties concerns whether Defendant Wright purposefully directed any activity into Illinois. Defendant Wright contends that he is not subject to personal jurisdiction in Illinois because he has never had a residence in Illinois, never worked in Illinois, never maintained a bank account in Illinois, and never paid any income tax in Illinois. *See* [18] at 13. He remains domiciled in the UAE and supervised all of Plaintiff's work from the UAE. *Id*. While Plaintiff engaged in travel for work, [1] ¶ 26, Wright has "not traveled to Illinois for any reason whatsoever in for [*sic*] approximately 10 years." [18] at 14. His day-to-day tasks do not center on the United States, much less Illinois; "during the time Wright supervised Plaintiff, Chicago O'Hare Airport was one of 75 airports around the globe at which he oversaw Etihad's airport operations, and [he] also oversaw hundreds of other Etihad network operations employees located around the globe." [22] at 5; *see also* [22-1] ¶ 3. From this, Defendant Wright concludes that because "only a small fraction" of his work for Etihad "entailed Etihad's operations in the United States (in New York, Chicago, Los Angeles, and Washington, DC)," he cannot fairly be said to have expressly targeted Illinois. [22-1] ¶ 3–4 ("Chicago represented approximately one percent (1%) of Etihad's Global Airports division. . . . I also had responsibility for approximately 450 additional employees as part of the Network Operations department—none of which were employed in the USA.").

In response, Plaintiff does not dispute that Defendant Wright "is domiciled in the UAE, has never lived in Illinois or traveled to Illinois for work, [nor] that all of his work in connection with Plaintiff was performed in the UAE." [21] at 7. Nor does

9

Plaintiff dispute that Defendant Wright is responsible for activities conducted at 75 airports located around the world in 46 countries, of which Chicago's O'Hare Airport ("O'Hare") is only one. [25] at 8–9. Instead, Plaintiff emphasizes that Etihad purposefully availed itself of doing business in the state of Illinois and Defendant Wright, in turn, "used Plaintiff for years as his hand to avail himself of the privilege of doing business in Illinois." [25] at 4. Specifically, Etihad holds a license to do business in Illinois, operates a direct air service between O'Hare and Abu Dhabi, and employs several Illinoisans to manage its O'Hare operations. [21] at 7–8. Etihad employed Defendant Wright "to direct, supervise, and manage Plaintiff" among others, and "[t]o do his job, Defendant Wright is therefore purposefully availing himself of the privileges of conducting business in the United States and in Illinois in particular as well as specifically and purposefully directing his activities (and his 445,000-to-660,00-pound airplanes) at the United States and State of Illinois." *Id*. In brief, because Etihad has substantial operations within the state of Illinois, and because Defendant Wright supervised and directed those operations in accordance with his job, he may be fairly haled into courts within the state.

At the outset, the Court notes that merely because Etihad purposefully availed itself of the privilege of doing business in Illinois does not, by extension, automatically mean that Defendant Wright purposefully availed himself of Illinois. In *Calder*, a California entertainer brought suit for libel in a California court over the publication of an inflammatory article in the National Enquirer. 465 U.S. at 785. She sued the Florida-based National Enquirer and two Florida-based employees responsible for

the article. *Id.* at 785. In disposing of the employees' personal jurisdiction challenge, the United States Supreme Court acknowledged that "[e]ach defendant's contacts with the forum State must be *assessed individually*," and accordingly, the employees' "contacts with California are not to be judged according to their *employer's* activities there." *Id.* at 790 (emphases added). Similarly, in *Keeton v. Hustler Magazine, Inc.*, a domiciliary of New York brought a libel suit in a New Hampshire court against Hustler Magazine and its publisher, editor and owner. 465 U.S. at 781 n.13. In evaluating personal jurisdiction, the Supreme Court reiterated that jurisdiction over the individual defendant-employee turns not upon the jurisdictionally relevant actions of the *business*, but rather upon the *individual's* own contacts (professional or otherwise) with the forum. *Id.* The Court again instructed that "[e]ach defendant's contacts with the forum must be assessed individually." *Id.*; *see also Purdue Rsch.*, 338 F.3d at 784 (noting "the Supreme Court's emphasis on the need for an individual assessment of a particular defendant's contacts with the forum state"). *Cf. Hardin Roller Corp. v. Universal Printing Mach., Inc.*, 236 F.3d 839, 842 (7th Cir. 2001) ("[T]he Constitution does not shield persons who act as corporate agents from individual-capacity suits.").[3] In view of the Supreme Court's guidance, Plaintiff's

---

[3] The parties' arguments raise, without expressly addressing, the fiduciary shield doctrine. Under the doctrine, "Illinois courts lack personal jurisdiction over an individual whose presence and activity in the state in which the suit is brought were *solely on behalf of his employer or other principal.*" *C.S.B. Commodities, Inc. v. Urb. Trend (HK) Ltd.*, 626 F. Supp. 2d 837, 847 (N.D. Ill. 2009) (emphasis in original) (explaining that "[c]ourts in this district consistently have applied the fiduciary shield doctrine in federal question cases") (citing *Rice v. Nova Biomedical Corp.*, 38 F.3d 909, 912 (7th Cir. 1995)); *see also Greene v. Karpeles*, No. 14 C 1437, 2019 WL 1125796, at *10 (N.D. Ill. Mar. 12, 2019) (noting that even where "federal due process would permit the exercise of personal jurisdiction over a defendant, the fiduciary shield may preclude it."). As explained by the Illinois Supreme Court, where an individual defendant's conduct "was a product of, and was motivated by, his employment situation and not his personal interests . . . it would be unfair to use this conduct to assert personal jurisdiction

arguments concerning Etihad's overall operations in Illinois do not, standing alone, support an exercise of specific personal jurisdiction over Defendant Wright.

Plaintiff's other arguments regarding Defendant Wright fare better. Plaintiff points out that as Vice President of Global Airports and Network Operations for Etihad, Defendant Wright enjoys significant authority in managing employees, including making crucial employment decisions. *See* [1] ¶¶ 42–44 (devising new roles), 46 (conducting performance reviews), 48 (rejecting employment candidates), 47–49 (hiring), 61–66 (same), 71–73 (recommending candidates), 77 (interviewing and hiring candidates); [25-1] ¶ 8 (discussing Defendant Wright's required approval of hiring, firing, and placement decisions). Plaintiff argues that Defendant Wright also managed several employees stationed at O'Hare during the time he managed her. *Id.* ¶¶ 42–43; [21] at 8 (describing Defendant Wright's oversight of O'Hare employees); [21-3] ¶ 4. Notably, his management responsibilities encompassed supervision of Plaintiff, and Defendant Wright was "at all times" aware that Plaintiff was located in Chicago and would feel the brunt of his employment decisions in Illinois. [21] at 8; [21-3] ¶¶ 13–15 ("Defendant Wright was well aware that [Plaintiff] was in Chicago as [the parties] discussed it on numerous phone calls, and he knew

---

over him as an individual." *Rollins v. Ellwood*, 565 N.E. 1302, 1318 (Ill. 1990)). The Court need not decide whether the fiduciary shield operates in this case as personal jurisdiction does not exist vis-à-vis Defendant Wright under federal Due Process principles. *See C.S.B. Commodities*, 626 F. Supp. 2d at 847 ("Application of the doctrine is discretionary or equitable, not absolute."); *Edelson PC v. Girardi*, No. 20 C 7115, 2021 WL 3033616, at *6 (N.D. Ill. July 19, 2021) (declining to apply the shield where defendant relied solely on general federal due process principles and raised the shield solely in reply). *Cf. Urquhart-Bradley v. Mobley*, 964 F.3d 36, 46 (D.C. Cir. 2020) (holding that "courts cannot ignore contacts made by the individual just because they were made in his or her capacity as an employee or corporate officer. Contacts are contacts and must be counted. Said otherwise, the Due Process Clause does not incorporate the fiduciary shield doctrine.").

that [the role's] responsibilities required [Plaintiff] to be in Chicago."). Defendant Wright also participated in terminating Plaintiff from her position—a position based, at the relevant time, in Chicago, *id.* ¶¶ 85–95; *see also* [21] at 9 ("The position from which Plaintiff was being terminated was also in Chicago at the time."); [21-3] ¶ 18 ("Defendant Wright knew I was in Chicago when he terminated me."). These allegations satisfy the third prong of the *Calder* test, namely, that the defendant acted "with knowledge that the effects would be felt—that is, the plaintiff would be injured—in the forum state." *Tamburo*, 601 F.3d at 702 (citing *Calder*, 465 U.S. 789–90).

Plaintiff also clears the first hurdle of the *Calder* test; Plaintiff's allegations demonstrate (at this preliminary stage) that Defendant Wright engaged in intentional conduct that bears on the substantive dispute. *See id.* Plaintiff contends that Defendant Wright made harassing and threatening statements directly to her in response to her concerns regarding the putative policies. *See* [1] ¶¶ 37–38 ( "[Y]ou need to remember that all of us will be replaced by UAE Nationals"), 49 ("I have been quite clear with you that [an employment candidate] holds the wrong passport for the role[;] it must be filled by a UAE National."), 2 ("[Plaintiff] was also told repeatedly by Defendant Wright that her job life was limited because 'we will all be replaced by Emiratis.'"). After she filed formal complaints with human resources and complained of the discrimination to Defendant Wright, *see id.* ¶¶ 40, 59, 66, 82, he responded by making implicit and explicit threats to her employment, including by way of threatening to relocate her position from Chicago to London. *Id.* ¶¶ 41–43

("Defendant Wright attempted to place pressure on [Plaintiff] by claiming that Etihad needed to have direct supervision in London—which meant that [her role] would have to relocate."); *see also id.* ¶¶ 44, 79–82. In view of these allegations, which the Court takes as true for present purposes, Defendant Wright intentionally participated in the harassment, discrimination and retaliation that forms the basis for the present dispute.

That leaves only the second prong of the *Calder* test: Did Defendant Wright expressly aim his conduct at Illinois? The Seventh Circuit consistently requires "'something more' beyond injury in the forum state from an alleged intentional tort" before finding personal jurisdiction. *uBid*, 623 F.3d 427, n.1; *Majumdar v. Fair*, No. 21 C 928, 2021 WL 4864147, at *5 (N.D. Ill. Oct. 19, 2021) ("It is true that, after *Walden*, it is no longer possible, if it ever was, to interpret *Calder* to mean that, when a plaintiff suffers a tort injury in a particular state, the fact that he suffered the injury in that state necessarily suffices to permit the exercise of personal jurisdiction over the accused defendant there."); *see also Wallace v. Herron*, 778 F.2d 391, 394 (7th Cir. 1985) ("We do not believe that the Supreme Court, in *Calder*, was saying that any plaintiff may hale any defendant into court in the plaintiff's home state, where the defendant has no contacts, merely by asserting that the defendant has committed a tort against the plaintiff."); *United Airlines v. Zaman*, 152 F. Supp. 3d 1041, 1050 (N.D. Ill. 2015) ("[T]he mere geography of Plaintiff's injury and Plaintiff's location, without more, can no longer serve as the relevant contacts supporting personal jurisdiction."). "The 'express aiming' test 'focuses attention on whether the defendant

intentionally aimed its conduct at the forum state, rather than on the possibly incidental and constitutionally irrelevant effects of that conduct on the plaintiff.'" *Telemedicine Sols. LLC v. WoundRight Techs., LLC*, 27 F. Supp. 3d 883, 890 (N.D. Ill. 2014) (quoting *Mobile Anesthesiologists*, 623 F.3d at 445, n.1). "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden*, 571 U.S. at 290.

This is where Plaintiff's argument falters. In an effort to establish a meaningful connection between Defendant Wright's conduct and Illinois, Plaintiff relies on an attenuated chain of reasoning. As Vice President of Global and Network Operations, Defendant Wright "was responsible for all Etihad operations around the world." [25-1] ¶ 4. To accomplish his sweeping task, Defendant Wright supervised numerous employees, including Plaintiff. [21-3] at ¶ 8. Plaintiff, in turn, oversaw operations at "23 airports across the Western Hemisphere," including those stationed in Canada, South America, the United Kingdom, Morocco, the United States and Europe. *Id.*; [1] ¶ 25. Within the United States, Plaintiff was responsible for four airports, including O'Hare. [21-3] ¶ 8. To oversee operations in O'Hare, Plaintiff "in turn, supervised other individuals." [25-1] ¶ 6. According to Plaintiff, this chain shows that Defendant Wright expressly aimed his conduct at Illinois because he employed Plaintiff as "[his] hand in Chicago to direct operations in and out of O'Hare International Airport as well as several other airports in the United States and Europe." *Id.* ¶ 5.

15

The Court disagrees. At best, these allegations establish that Defendant Wright oversaw Plaintiff's operations in the United States; Plaintiff, in turn, supervised operations at O'Hare. *See* [25-1] ¶ 8. In *Walden*, the Supreme Court made plain that it is improper to attribute a plaintiff's own forum connections to the defendant, as to do so would "make those connections 'decisive' in the jurisdictional analysis." 571 U.S. at 289 (citing *Rush v. Savchuk*, 444 U.S. 320, 332 (1980)). For that reason, Plaintiff's oversight of O'Hare cannot be automatically imputed to Defendant Wright. As the Seventh Circuit has recognized, the "relation between the defendant and the forum [must] arise out of contacts that the 'defendant *himself*' creates with the forum," and "[c]ontacts between the plaintiff and other third parties and the forum do not satisfy this requirement." *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014) (emphasis in original) (citations omitted). The Court remains unconvinced that these allegations regarding Etihad's internal structure forge a sufficiently meaningful connection between Defendant Wright and Illinois beyond that of Etihad, Plaintiff and other third parties.

Plaintiff, however, does not rely on Etihad's supervisory structure alone; there are two other facts that bear heavily on whether Defendant Wright expressly aimed his conduct at Illinois. First, Defendant Wright communicated at great length with Plaintiff throughout the term of her employment. These communications included everything from standard requests for time off and employment-related travel, to hiring and firing decisions, to annual and mid-year performance reviews of Plaintiff's

work product, to even the allegedly discriminatory and harassing comments made by Defendant Wright. *See, e.g.*, [25-1] at 8–11. Directing communications of this sort, including phone calls and emails, to Plaintiff in the state can form the basis for personal jurisdiction. *See Urb. 8 Danville Corp. v. Nationwide Affordable Housing Fund 4*, LLC, No. 19 C 03171, 2020 WL 3058101, at *3 (N.D. Ill. June 9, 2020) (citing *Levin v. Posen Found.*, 62 F. Supp. 3d 733, 740 (N.D. Ill. 2014) ("The Seventh Circuit has explained . . . that emails may be properly considered in minimum contact analyses, especially if they were purposefully sent to a forum resident knowing that they would be read in the forum.")); *Triad Capital Mgmt. LLC v. Private Equity Capital Corp.*, No. 07 C 3641, 2008 WL 4104357, at *5 (N.D. Ill. Aug. 25, 2008) ("[E]ven when contact takes place only via telephone or email, it can create a substantial connection between the defendant and the forum state."). The mere fact that Defendant Wright never set foot in Illinois does not alter this approach. *See Burger King*, 471 U.S. at 476 ("[I]t is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted.").

Second, Defendant fired Plaintiff while she was working in Chicago—from a role ostensibly based in Chicago. *Id.* ¶ 9; [1] ¶ 95. In *Leong v. SAP Am., Inc.*, a gender discrimination action, a court in this District faced the question of whether a foreign defendant (a resident of Germany) who "never worked, lived or owned property or even set foot in the State of Illinois for any reason" could nevertheless "reasonably

anticipate being haled into a court in Illinois on the basis of a handful of communications and decisions regarding a single Illinois employee?" 901 F. Supp. 2d 1058, 1063 (N.D. Ill. 2012). The court found the defendant could, as while she "did not physically travel to Illinois, she made decisions regarding [plaintiff's] compensation and employment which she knew would affect [plaintiff's] job in Illinois." *Id.*; *see also Cuff v. Trans States Holdings, Inc.*, No. 10 C 1349, 2010 WL 2698299, at *4 (N.D. Ill. July 8, 2010) (termination letter sent to Illinois employee was "knowingly and intentionally directed towards Illinois" where employer knew that "any wrong done to the Plaintiff would be felt at least in part in Illinois"); *Rice v. Nova Biomedical Corp.*, 763 F. Supp. 961, 965–66 (N.D. Ill. 1991) (defendant subject to Illinois jurisdiction because he terminated Illinois employee by telephoning him in Illinois). So too here. Plaintiff alleges that Defendant Wright fired her from her Chicago-based role after making numerous decisions regarding her employment. In addition, Plaintiff alleges that Defendant Wright threatened to relocate her position from Chicago to London in response to her complaints of discrimination. [1] ¶¶ 41–44. That harm reaches beyond Plaintiff and extends into Illinois. Plaintiff's allegations suggest that Defendant Wright's termination and harassment of Plaintiff were indeed "tethered" to Illinois in a meaningful way. *Walden*, 571 U.S. at 290 (reiterating that the "minimal contacts" threshold requires that a defendant direct its activities to the forum itself, not merely to forum residents).

There is, however, one final step. The Court cannot exercise personal jurisdiction over a defendant if doing so would offend traditional notions of fair play

and substantial justice. *See Int'l Shoe*, 326 U.S. at 316. In determining the reasonableness of exercising jurisdiction, courts consider: (1) the burden on the defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive policies. *See uBid*, 623 F.3d at 432; *Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 396 (7th Cir. 2020). When the "defendant's minimum contacts with the forum are relatively weak (although existent), these considerations may militate in favor of the exercise of jurisdiction." *Curry*, 949 F.3d at 402 (quoting *Purdue Rsch.*, 338 F.3d at 781). Where, however, as here, "the plaintiff has made a threshold showing of minimum contacts, that showing is generally defeated only where the defendant presents 'a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Curry*, 949 F.3d at 402 (quoting *Burger King*, 471 U.S. at 477).

Based on the record here, the first factor (the burden imposed upon Defendant Wright in litigating in Illinois) tips against exercising personal jurisdiction. The "unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight." *Asahi Metal Indus. Co. v. Superior Court of Cal., Solano Cnty.*, 480 U.S. 102, 114 (1987). As discussed above, Defendant Wright is a domiciliary of the UAE and citizen of Australia who has never: (1) lived in Illinois; (2) maintained a residence in Illinois; (3) worked in Illinois; (4) held a bank account

in Illinois; (5) traveled to Illinois "for work of any kind, including [his] work for Etihad"; or (6) paid any income tax in Illinois. [18] at 13, ¶¶ 3–4. Defendant Wright states, and Plaintiff does not dispute, that his supervision of Plaintiff occurred entirely from the UAE, as he "ha[s] not traveled to Illinois for any reason whatsoever in approximately 10 years." *Id*. at 14, ¶ 6. He would expend considerable resources to litigate in a foreign system.

The Court notes that in certain circumstances, minimum contacts may "justify the serious burdens placed on an alien defendant," but Defendant Wright's contacts with Illinois are relatively weak. *Mid-Am. Tablewares, Inc. v. Mogi Trading Co., Ltd.*, 100 F.3d 1353, 1362 (7th Cir. 1996) (quoting *Asahi*, 480 U.S. at 114). The misconduct alleged against Defendant Wright centers on his supervision of Plaintiff through the course of his employment with Etihad. As stated, Defendant Wright supervised operations in approximately 46 countries and during the relevant period of Plaintiff's employment, O'Hare was only one of 75 airports that fell within Defendant Wright's purview. Stated differently, operations at O'Hare Airport accounted for "approximately one percent (1%) of Etihad's Global Airports division." *Id*. While the Court agrees with Plaintiff that "courts do not determine whether there is a substantial contact with a forum by comparing it as a fraction of all forums with which the defendant has contact," [25] at 9; *see also Lexington Ins. Co.*, 938 F.3d at 882 ("Only a defendant's actions can empower a state to exercise jurisdiction over him." (citation omitted)), it is helpful in assessing the *reasonableness* of subjecting Defendant Wright to jurisdiction within the forum state. *Cf. R&B Receivables Mgmt.*,

20

*Corp. v. United States Dep't of Health & Hum. Servs.*, No. 15 C 8109, 2017 WL 3034668, at *3 (N.D. Ill. July 18, 2017) (finding that defendant did not expressly target Illinois as required under *Calder* in part because defendant "oversaw 134 entities that operated in 34 states" which "represented a small fraction of her work"). Defendant Wright was responsible for numerous employees within the United States and around the world, and all non-Emiratis were ultimately subject to the alleged discriminatory policies (including Defendant Wright). *See* [1] ¶ 2. The Court is wary of a judicial rule that would authorize sweeping jurisdiction arising from Defendant Wright's global supervisory role at Etihad.

The second factor, Illinois' interest in adjudicating this dispute, also tips against extending the Court's jurisdiction to encompass Defendant Wright. Illinois maintains "a strong interest in providing a forum for its residents . . . to seek redress for harms suffered within the state by an out-of-state actor." *Curry*, 949 F.3d at 402. Plaintiff is an Illinois resident and should be allowed to recover fully for her injuries in a convenient forum. But, in dismissing the suit against Defendant Wright, the Court does not minimize that interest; Plaintiff can continue to sue Etihad (an entity licensed to do business within the state of Illinois) in Illinois. "[T]he decision not to exercise personal jurisdiction in this instance does not leave Plaintiff without any remedy. There are still other named defendants in this suit, from which Plaintiff could potentially recover in full." *Walker v. Macy's Merch. Grp., Inc.*, No. 14 C 2513, 2016 WL 6089736, at *7 (N.D. Ill. Oct. 12, 2016). So too, the "opportunity to obtain

relief from the remaining parties also ensures that the interest of Illinois in providing a right of redress to its injured citizens is satisfied." *Id.*[4]

That leads neatly to the third and fourth factors: Plaintiff's interest in obtaining convenient and effective relief and the interstate judicial system's interest in obtaining the most efficient resolution of controversies. Just as Defendant Wright will have the burden of litigating here in a legal system foreign to him, Plaintiff will face similar burdens if she pursues Defendant Wright in the UAE. Plaintiff is not, however, compelled to bring suit in the UAE. She may properly proceed with her case against Etihad in Illinois. While it may be cumbersome to expect Plaintiff to litigate against Etihad and Defendant Wright separately, Plaintiff already faces an uphill battle given that the relevant witnesses and documentary evidence are likely to be located outside of Illinois. Not only did Plaintiff engage in "considerable travel" to Abu Dhabi for work, [1] ¶ 26, but she gained exposure to the policies while present in the UAE, *see* [1] ¶ 2.[5]

The fifth factor, the shared interest of nations, tips against an exercise of personal jurisdiction. As the Supreme Court has explained, courts must remain

---

[4] Indeed, Plaintiff will be able to pursue all of her claims—those brought under Title VII and 42 U.S.C. § 1981—against Etihad. She cannot sue Defendant Wright under Title VII. *See* 42 U.S.C. 2000e(b); *Williams v. Banning*, 72 F.3d 552, 555 (7th Cir. 1995) (affirming dismissal of Title VII claims against a supervisor because "a supervisor does not, in his individual capacity, fall within Title VII's definition of employer").

[5] Plaintiff alleges that in 2018, she attended a Global Airports leadership meeting in Abu Dhabi. The then-Manager of UAE Development presented a plan to fill all Airport Manager roles with UAE Nationals and/or people of Emirati descent. *Id.* Plaintiff alleges that the Etihad Board promulgated the policies, which indicates that the relevant documentary materials concerning the drafting, issuance, scope of the policies are likely located abroad as are the likely witnesses (including Defendant Wright). *Id.*

cognizant of "the procedural and substantive policies of other nations whose interests are affected by the assertion of jurisdiction," because "[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." *Asahi Metal Indus.*, 480 U.S. at 115 (citation omitted). On this point, Plaintiff argues that "anti-discrimination is a fundamental policy of the United States and the State of Illinois [and] the UAE [may] be particularly handicapped in its ability to preserve Plaintiff's right against discrimination in the U.S." [25] at 7. The Court finds this argument persuasive. Nevertheless, Plaintiff preserves the right to vindicate her interests against Etihad, the purveyor of the discriminatory policies, in Illinois. For that reason, Plaintiff's argument carries minimal weight when it comes to Defendant Wright.

When considering the competing interests presented by this case, the Court finds that the principles of fairness militate against exercising personal jurisdiction over Defendant Wright.

## IV. Conclusion

The Court grants Defendant Wright's motion to dismiss for lack of personal jurisdiction [17] and dismisses Plaintiff's claims against him pursuant to Fed. R. Civ. P. 12(b)(2).

Date: March 22, 2022

ENTERED:

John Robert Blakey
United States District Judge